Good morning, Your Honor. It's Jason Karp, appearing on behalf of the appellant, Donald Anderson. I intend to reserve a minute or two of my time for rebuttal with the Court's leave. The underlying issue in this case is, one, a restitution. But it turns out the more interesting issue from a legal standpoint is a threshold question this Court must reach, which is, is there a valid waiver of appeal clause here that is enforceable by the government? Our answer to that in this case is clear. The government repudiated the contract at the sentencing hearing, did not comply with the terms of the contract, did not fulfill their contractual obligations under the agreement. And in addition, the Court found that there was insufficient evidence of a breach. And those two arguments are separate but related. To begin with, the government, in their answering brief, does state that this objection to – there was no objection to that question of breach, and that, therefore, this Court shouldn't consider that issue. We submit that as wrong for two reasons, one, both legal and two, factually. The easy one is the factual issue. Was this objected to? Did defense counsel at sentencing object to the question of breach? And we submit that the defense counsel did. I would direct the Court's attentions to page 69 and 70. 69 and 71 of the excerpt from record for counsel complains of both the quality  On page 70, defense counsel specifically mentions that this question of breach has relevance to the government's obligations under the plea agreement. Forward on pages 86 to 88, defense counsel once again objects, says that the quality of evidence of breach that was presented was insufficient. And specifically sets forth on page 88 that the government shouldn't be relieved of the obligations under the plea agreement because they didn't prove sufficient evidence to relieve the government's obligations. Now, defense counsel never said breach, but he certainly was talking about that. The issue was litigated to the district court. We would submit that the question of whether or not there was adequate evidence of breach was adequately preserved in this matter. The second question is, does it matter legally? Plain error doctrine generally applies to a question of an attack to a judgment by a criminal defendant, whether or not error was preserved when a criminal defendant is trying to overturn a conviction or a sentence. Here, what we're looking at is a threshold initial jurisdictional question of whether or not there's a valid waiver of appeal clause. That puts the onus of the government to come forward and argue under contractual law principles that there is a valid agreement here, and once more, that that agreement is enforceable against the defendant. Since that puts the burden on the government to come forward with evidence of the enforceability of the contract, I question whether or not doctrines of plain error even apply here. What this Court needs to do is just apply, step out of the criminal realm and apply civil law principles here of contractual interpretation to determine whether or not this waiver clause is enforceable against our client. As far as the sentence goes, he served his sentence, right? Nothing we can do about that now, Your Honors. So there's no question. The only practical thing is whether the restitution order should be upheld. Correct. And the question, we would concede that the question, the substantive question here of restitution was not preserved, and if the Court gets to the substantive question, that has to be read for plain error. But on the issue of the contractual question, we do look at contract law, and what contract law says, and I'll show you. Let's jump ahead, though, for a second. Let's assume we agree with you that there's been a breach. So the consequence is that the plea agreement is thrown out, right? Your Honor, if I may answer, the answer to this question is found in the Restatements of Law, second Restatements of Law contract, section 253, subclause 2. It says, Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance. So here, when the government repudiated the contract, that discharged our obligation, any further obligations we had under the contract. Well, that's what Judge Thomas just said to you. Assume we have jurisdiction, there was a breach. What's wrong with the restitution order? What's wrong with the restitution order is that even under the liberal requirements of the Mandatory Victim Restitution Act, that they can only bring in restitution that's related to the scheme that's pleaded to. Here, essentially, in the original government indictment, the government pledged two separate schemes. One involved the client's use of fraudulent names to secure mortgages and second mortgages on homes. That's the bank fraud-related scheme. The second scheme, which is alleged in Count 5, talks about access device fraud and the use of a fraudulent scheme to get utility services and so on and so forth. And that, we would submit, is the second scheme. And the government's characterization of the schemes here and what my client pledged to is carefully laid out in the plea agreement on ER pages 42 to 43. The factual basis of the plea, and it pertains only to a mortgage, a bank fraud mortgage fraudulent scheme. It had nothing to do with access device cards or anything of that matter. Right, but now that, if we accept your argument that the plea agreement is void, what does that do to the second scheme? They're free to charge your client. They're free to, I mean, their agreement to dismiss those counts and not to charge again is also, their obligation not to do that is also removed, isn't it? That's certainly a question. I would not concede that here, but that does come into play. If the government refiles, then we'll have to litigate that at a future time. Well, you can't hold them to that promise if you're saying all bets are off. You're probably right, Your Honor, but I'm just not sure. So you're putting your client at some risk of greater penalties, aren't you? Well, it could be, Your Honor, it could be. Then this case did come to us in midstream on appeal, and we take the cases as they come in. The Court may have some valid concerns there, and if we have to litigate that at a future time, we will. Now, you have to make a choice. Could I just explore that? You take the case as it comes, but doesn't the client have a decision whether or not he wants to pursue an appeal and decide whether he wants to open himself up to successive prosecution? He does, Your Honor, and it's our duty to consult with him on those requirements and the client's decision whether or not to proceed with the appeal without divulging anything. And that's been done. Without indulging any attorney- Well, that's right. I mean, whatever. I just told you, you said it came across as a matter of policy. We take it, and too bad if we- We do have a duty to consult, certainly. No, and you're an experienced litigator and appellate advocate, so I'm sure- Oh, I wasn't sure in other words. But that's- It is my boss's case. The other thing, Your Honor, that I wanted to point out is that the statute, once the plea agreement is gone, we look to solely to the statute for restitution, and the statutory language says that the court may impose any restitution relevant to the scheme of the count of conviction. And our argument here is that there are two separate schemes. My client only pled to one. Therefore, restitution only flows from the losses incurred by the one scheme, and that would be our argument on the substantive issue. Okay. Do you want to reserve some time for- I do. All right. Thank you. Very good. Good morning. Good morning. Daniel Sheese. I'm the prosecutor who handled the case below. I submit to you that the analysis that should be used to resolve this issue is, first, whether the government breached the contract, the plea agreement. If the government did not, then the case should be resolved and dismissed under the waiver of appeal. If you find that the government did breach the plea agreement, then the plein air analysis applies as to whether the defendant should have raised that issue below. And if you find that we have breached the plea agreement, then the next step is, what's the remedy? Let me go back to that very beginning. Unequivocally, my position is the government did not breach the plea agreement. It's hard to see that on this record, though. There's no, there's a specific finding that there's not enough evidence of criminal conduct, right? So the district court starts off and says, there's no, I can't make a finding of criminal conduct, but I'm going to relieve your obligations anyway. How do we deal with that? Let's start there with the Court's finding that there is insufficient evidence to find criminal conduct, and let's go back. That finding is on page 96 of the extradited records. At the very beginning of the sentencing hearing, I introduced evidence to show the Court that the defendant engaged in criminal conduct. I put an FBI agent on to introduce that evidence. As soon as I was done, defense counsel then commented and argued to the Court as to the lack of the quality of evidence to be able to prove that. As soon as he was done, the defendant stood up and said, Your Honor, here's why the government's all wet. Only then, only then did the government make the ruling that there was insufficient evidence. So up until that point, I did not breach the plea agreement. Under the plea agreement, I had the right to prove that he engaged in criminal conduct from the moment he entered his plea until the time of sentencing. No one's suggesting another one. Excuse me? No one's suggesting another one. Mr. Carr just did in his brief by saying that the matters were raised from pages 69 to 88. No, I mean, he was arguing that he didn't waive his objection. Well, he didn't even object, address the objection. But going to my point here, at that point when the judge says there's insufficient evidence to find criminal conduct, in that same breath or the same statement the judge said, I find there's questionable conduct, number one. Number two, I'm going to impose the high end of the guideline range at 18 months. And number three, even if the government were to recommend low end, I'm not going to follow it. At that point in time, would it have done me any good to stand up and say, Judge, you already know that I'm supposed to recommend low end. You've rejected my recommendation already implicitly. What could I have done at that point? Could I have stood up and just mouthed the words? Well, that's, you know, there are lots of things you might have done, but that's not what you could have done at that stage, isn't our issue. Our issue is, did you reach the plea agreement? The plea agreement says he has to engage in criminal conduct. District court says, I can't make that finding. And then you make the recommendation, well, you make a recommendation that was not in conformance with the plea agreement. I didn't have time to make that recommendation. The judge said, the judge made his ruling. Once he made that ruling, Your Honor, then I was obligated. Well, no, you weren't, because he said then he follows up by saying, I'm going to relieve your obligations. I'm sorry, I didn't hear you. The judge follows up by saying, I'm going to relieve you of your obligations. It's 96 to the exerted records, exerted record. You've asked to be relieved of your obligations, Your Honor, and I mean, I'll grant that request. I made that request to be relieved before he made the finding that there was insufficient evidence. Only when he made that finding, in that finding he says, I'm going to make the finding that there was somewhat equivocal evidence. And then he says, now, I don't know how you want to look at this, Mr. Sheese. I'm not going to follow the plea agreement. You've asked to be relieved. And that was before he makes the appropriate finding. I mean, I'll grant it, because I think there was enough here. But even if you were to come in here and say, I stand by it, but I'm not going to do it. Breyer, I guess you've got a harmless error analysis, but it's very difficult to look at this record and say, with the district court finding of no criminal conduct, and that is the only basis on which you can be relieved of your obligation, that the district court could have relieved you of your obligation to proceed in the agreement. I mean, that's just plain error in one paragraph. If there is a plain error, whose error was it? Was it mine or the judge's? If it's the judge's, it's not a breach of the plea agreement by the government. It's a pretty hyper-technical argument. You know, here you have a defendant who is not charged with any crime. This conduct you put on was not he was never charged with it, correct? You didn't charge him. State didn't charge him. All we have is hearsay evidence that the person from one of his business associates, they come into court and the business associate, for whatever reason, doesn't appear, and he leaves a phone message that says that it was all a big misunderstanding. And you want to say, all right, we want to be relieved of our obligation. The district court said, well, there's not enough here to find criminal conduct. I make that finding, but I'm going to relieve you of your obligation anyway. So the factual underpinnings for the district court's decision to relieve you of your obligation are simply erroneous. What you had to do, following the contract, was say, but, Your Honor, I have an obligation to recommend the low end, and I so do. Then he would have been he could have done what he wanted. But you had that obligation to comport with the contract. So why don't you go on to the next issue? You're just wasting time. All right. Under the reason under the plein air analysis, in this particular case, the question is what prejudice arises to the defendant? The judge knew what my recommendation would be. He already said, your recommendation of low end, I'm not going to follow it. So the defendant got the benefit of the bargain in the sense that even had I made that recommendation, the court wasn't going to follow it. And therefore, he suffered no prejudice. And if you take out now his argument that he's entitled to relief because of the obligation, what's the next step of restitution? Well, the problem with that argument is that this is a negotiated agreement. You're, in fact, trying to enforce it against the defendant and say, notwithstanding you never proved the precondition to relieving yourself of the obligation, you get to enforce it against him, and he, therefore, waives all rights to appeal.  And so the question is, if we do reach the restitution order, and let's assume that the plea agreement is void, where does that leave the parties, particularly where does it leave you with the ability then to tie it to the restitution order to anything beyond count one? Let me take your first comment there with respect to the waiver of appeal. Although I raise that argument in the brief, upon careful reading of United States v. Gonzales at 16 Fed 3, 985, I abandon that argument, merely because the defendant is now coming into court saying the government breached the plea. He is in his waiver of appeal is invalid as to that issue, because the Ninth Circuit has continuously recognized, clear back since 1993, that a breach of a plea agreement does not or it abrogates a waiver of appeal. So now back to your question of how do we tie it together. I tie it together under this. Under the plain air, the question is, if there's a breach, what's the remedy if the plain air analysis doesn't end the matter? And the remedy then should be construed in terms of fairness to all parties. The Court doesn't have to relieve the defendant of his obligation to pay restitution on everything but count one. Count one was charged as a separate scheme from counts two and three and count four. The Court needs to fashion a remedy, and it goes back now to what's fair. What's fair in this case is, goes back, clear back to the time of sentencing, when the Court said, even if you were to recommend the low end, Mr. Sheets, I'm not going to follow it. I'm going to give you 18 months. That point, then the question becomes, did the government's breach harm the defendant in any possible way? The answer is no. And because it's no, the appropriate remedy then is to treat the parties fairly, leave it as it is where the restitution order should be at the $137,000 figure. What's the difference in restitution between what the defendant's asking for and the amount here? The – my recollection is the restitution in count one is about $55,000, but I'm just not aware. Okay. So we're talking about a $50,000 difference in restitution? Probably about $80,000. And do you know if the – since his release from prison, is the defendant employed? I don't know. I haven't followed through with probation to his status. All right. It sounds to me like this is the case that should be settled. That's up to you folks, but, you know, you're up here on a breach of – a lot of things could happen. It might be worth discussing. That's up to you, not us. But, I mean, you're only talking about $50,000 difference in restitution, which you may or may not be able to pay, so. Okay. With respect to my analysis of the timing of my obligation, and I there – would you just simply note – and I rely heavily upon the analysis of United States v. Gonzales under 16 Fed 3rd at 985. When it really goes to that point of when did I have an obligation and did I not? I take your point on that, but there's a broader issue, which – because we do see a fair number of breach of plea agreements, and a lot of them are not this situation, but situations in which there's been some remorse on behalf of an AUSA about making a deal. And come into – they discover something like this, and they use it to kind of shade the sentencing. In other words, we're not – we're going to put on evidence that this guy's a bad guy, and, you know, we're going to reluctantly kind of say, well, we've got to go along with the agreement, but we have an obligation to tell you all these things, and that's just not the – that's not the idea of a plea agreement. You make bad bargains, you make good bargains. And here, the judge heard a lot of bad stuff for a little while, and then he made his odd finding and relieved you of your obligation. And I take your technical point, but, you know, there is a broader issue here, too. I – with all due respect, I certainly understand my obligation. I adhere to it, and I have for 18 years as a prosecutor. And it's that point of, look, even if I did make it, did the defendant suffer harm because the court rejected that? Did I really breach it, or did the court make a bad ruling? Should I be held responsible as labeled as someone who breaches a plea agreement because the court made an error? And if the defendant agreed to waive his right to appeal on court errors, does that come back at the government's feet to be responsible for that? Well, you took the responsible approach of saying we're going to – we're asking to be relieved of the obligation, and the court said, I'm making the necessary findings that will ensure that you shouldn't be relieved, but I'm going to relieve you anyway. Now, that's the court's problem, not necessarily yours, so I wouldn't take it personally. And then, you know, I sit back. One of my policies as a prosecutor and as attorney is never to interrupt the court. I let the court finish what it's saying. I don't interrupt opposing parties. So when the court made its statement, by the time it got done, my thought process was, do I stand up and speak empty words? Should I just stand up and say just what Judge Noonan said? Nobody's questioning your good faith here that's not being alleged by the appeal, as I understand it. It's the – there's an obligation, a contractual obligation, and there's a precondition, and people can be in breach, maybe technical breach, but breach is breach. And so that's the legal label that's applied to it. Stand up and say, Your Honor, you jumped too fast. You don't say that, but you – he respects your 18 years of wisdom and says, look. And he understands you have to make a record anyway. Yeah, and I – I took it – you had the – things happen very quickly in a courtroom. You have to make snap judgment. But an option you had in hindsight was to stand up and say, Your Honor, in light of the finding, I have to withdraw my objection and conform my recommendation of plea agreement, and the court's going to say, well, it's noted, but I'm going to do the same thing anyway, and then you had a bulletproof appeal. Okay. Thank you. Just a tactic, you know. Your Honor, we just want to briefly clarify our position. Regarding the actual amount of restitution we're claiming as an issue, we detail that on page 13 of the opening brief where we claim approximately $60,202 of restitution is implicated by this. The rest of the restitution is appropriately tied into the mortgage scheme, and we aren't challenging that. So $60,000 is that issue here. And secondly, just to clarify, our position is that the plea agreement is really an oldie, a non-factor in the analysis at this point. We're not asking for a remand under the plea agreement, for a resentencing or anything of that nature. All we're saying here is that we aren't obligated to – the waiver clause is not operative against us any longer, and that the restitution order is improper under a strict reading of the statutory requirements for the imposition of restitution. Kennedy. What's the response to the government's argument that this was – would have been futile and that the proximate cause of this is not the government's breach, but it's the court's failure to make the appropriate finding, and in any event, having failed to make that finding, nonetheless demonstrated on the record that it wouldn't have made any difference anyway? The question of contractual interpretation is largely divorced from the issue of bad or good faith. Here, the government had specific obligations that they were required to do under the contract. They elected not to do that, and they are the ones who will suffer the consequences of that. Well, no, they did. They did what they should have done. They came in and attempted to demonstrate why their obligation should be excused. They were making the showing, and as counsel argued, the bottom line at the end of it was sort of preempted, and the court didn't make the necessary finding and instead went ahead and said, even if you had made the recommendation, even if you had government performed, it wouldn't have made any difference. Are you saying that the court was without jurisdiction to, at that point, disregard the plea agreement because it didn't make the necessary finding? Right. And the government reasonably relied on an erroneous finding of the district court, but that's really no different than any other posture when we're up here. You could debate the merits of an evidentiary issue during trial. The court rules against you. The government relies, reasonably relies on that ruling and presents the evidence. We still raise it on appeal and ask for reversal. It's no different here. The issue of breach was litigated. The court made an erroneous ruling on the breach, and we're arguing now that the record here does not support the government's anticipatory repudiation of the plea agreement. We aren't placing fault on the prosecutor or on the court. It was just an erroneous legal ruling that the government didn't fulfill their obligation because of that erroneous ruling, and therefore, the plea agreement doesn't deprive the Superior Jurisdiction to hear our restitution issue. That would be our position. Okay. Any questions? Thank you, counsel. Thank you very much. One thing before you leave, I want to ask both of you, and this has nothing to do with the case. In some other jurisdictions, the federal defenders and the U.S. Attorney's Office have requested that we group arguments on the same day. Is that more of a convenience to you from Las Vegas, or does it make any difference? If you have multiple arguments the same week. It doesn't make any difference. It's just a different process for each case. Yeah. It would make a big difference for us because we have appellate specialists, and it has happened to me on occasion where I'll have two or three arguments on the same day, and that does create a problem for our office, so. You would prefer to have on separate days, or? Separate days, phased out. Definitely around that. All right. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. The case is heard. It will be submitted.
judges: Noonan, Thomas, Fisher